In this case, the police forcibly stopped Mr. Montes at gunpoint and pat him down. But because they lacked reasonable suspicion and he was engaged in any criminal activity, that pat-down was illegal and what they found subsequently should have been suppressed. This is a straight Terry case. As you're all familiar, Terry requires that the police have reasonable suspicion that the person is engaging in criminal activity before they can stop him. So the facts are, if I read the record and your counsel, so I expect you to know them better than me, they see this kid, he comes by, he's driving with a guy who is a felon or not a felon yet but he's actually wanted for a felony and he is away from doing what needs to be done because he's wanted for that felony. In fact, he's fleeing and he's in the car with him and he's driving him. I guess I'm trying to figure out how that doesn't say there's reasonable suspicion to stop. At that point, there was a reasonable suspicion to stop him. They certainly could have stopped that van and investigated whether Mr. Montes' passenger was alone. The fact that he went on down the road and they saw him again means that they can't stop? That's correct, Your Honor. At that point, Mr. Montes, I mean, they could stop him the first time because Mr. Evans is. Pardon? Let's focus on the facts for a minute. So was he, did he stop at the scene where the police were? No, no. He drove perfectly legally. He slowed down because the police had one half of the street blocked. Everyone looked in. He pulled off at the illegal limit of speed. No one said stop. No one made any motion to him. Did the police go after him? The police didn't indicate that they wanted him to stop. Later, the police did go after him. But presumably, and there's no evidence that Mr. Montes, the driver, knew that the police were going after him. He just continued on down the road and eventually parked, quickly parked. Parked soon thereafter in a place where he apparently had some connection. So you're really suggesting to us that we should decide this case merely by the fact that here's the guy driving through. He's with the guy, which he should have, could have easily stopped him, is what I heard you say, either for eluding or for being involved in gang activity. But because a passage of time happened, that that reasonable suspicion is gone. They could have stopped him. Is that what you're saying? In a manner. What I'm saying is they could have stopped him in the van because that reasonable suspicion that Mr. Evans, the passenger, was engaged in criminal activity. Well, just a minute. He could be arrested for eluding or for helping to elude. I mean, there's one California Penal Code 32, which says anybody who harbors, conceals, or aids somebody who's not doing what he's supposed to do could have a crime. Anybody who participates in a criminal street gang has California Penal Code 186.22a. I mean, either one of those. Your Honor, those are two statutes. But he wasn't guilty of any criminal conduct at that point. He doesn't have to be guilty. Well, isn't that a suspicion of his guilt? Right. So because he is driving someone who does a worn-out form, there's no evidence that he knows there's a worn-out form. What I don't understand is why didn't the cops, if they thought that this guy was a murderer, had murdered, that his passenger was suspected of murder, why didn't they stop him? There were three or four cops at this probation check. Sounds like there were a lot more there, Your Honor. I don't know. And then, like I said, had they done that, we wouldn't be here. No one would argue that that was proper. But he is not, by the mere fact of driving with a passenger who has a worn-out form, there's no evidence that he knows he has a worn, no evidence that he's, with due respect, Your Honor, there's no evidence that he's fleeing. With due respect, I don't see anything in the statute which says, or either one of these statutes, which says that the police, giving reasonable, now we're only reasonable suspicion here, and all we've got to do is find a statute by which they can say this is reasonable suspicion, and if, in fact, what they have in front of them can meet some elements of the statute, reasonable suspicion easily comes. I mean, that happens with a guy who's just got a broken windshield, got a driver, got a license plate which isn't on exactly right, going over the line. Okay, but they didn't stop the car. They didn't stop the car. The car was parked. The car was parked. The defendant wasn't in the car. In fact, he wasn't even on that street.  And he was walking with this person who the warrant was out for. No, he was walking with a third person. The person with the warrant was not in here. And then they stopped him. And that's when we stopped him at gunpoint. Okay, so that's where they stopped him. So what was the reasonable suspicion there? I don't believe there was any, Your Honor.  I don't believe there was any reasonable suspicion there. I don't believe there was any reasonable suspicion there. Unless you can stop him just because he's a suspected gang member in suspected gang territory, and there's no law that allows that, he's still subject, he's still entitled to Fourth Amendment protections. What was the, what did the police articulate as their reasonable suspicion? The police didn't really articulate any position. The government and the district court blow, implying that perhaps they could stop him to investigate the warrant for his passenger, or warrant his passenger's whereabouts, which they certainly could talk to him about that, but they couldn't forcibly stop him and affect a seizure by pointing a gun at his head Counsel, this is Judge Rawlinson with a question. If you concede that they could talk with him, why couldn't they do the frisk based on officer's safety? If they had talked to him, well, one, there's no reasonable suspicion that he was armed and dangerous. Based on the evidence that there had been an ambush of police officers in this area, that they knew it was heavily gang infested, they didn't know where the suspect was that they were concerned about. Wouldn't that be enough to trigger officer's safety concerns? Possibly, Your Honor, but again, the law requires that they have some reason to believe that this particular individual is armed and dangerous, and they concede that there's no evidence of that. But beyond that... I mean, if there was a fear that there might be other gang members in the area, as evidenced by the prior history of ambush, that wouldn't be enough to trigger officer's safety in your view? It might be if the stops were permissible, and I don't know what the law, to be honest, would be on a voluntary encounter, whether they would then have the right to frisk. But we can't reach that point because we never got there. We never got to a place where there was a voluntary encounter between this police officer and my client. What we had was a forcible stop, and there's no dispute about that. I mean, any time someone pulls a gun out and points it at your head, that's a forcible stop. So whether they could have frisked him if the man had walked to him voluntarily, I don't really know the answer to that, but that's a question that we can't reach here because that didn't happen. So you're saying this wasn't a Terry stop? No, I'm saying it was a Terry stop. I'm saying it was an illegal stop. So you're saying it was a forcible Terry stop, and so under those circumstances, officer's safety doesn't come into play? No, no, officer's safety does come into play there, Your Honor. I'm sorry if I misspoke. We need reasoned suspicion before we can effect a stop, and that's what we're challenging in this case, the stop itself. If they can't stop, then they can't frisk. I see I have about one minute left. We have 24 seconds left. Why don't you sit down and use it for rebuttal? Let's take the time for rebuttal. If I may please the Court, my name is Ann Voigt, and I represent the government in this case. If I might start by addressing Judge Wardlaw's question as to what the reasonable suspicion was at the time that they stopped defendant. At the time that they stopped defendant, Officer Hurd knew that minutes earlier he'd seen defendant who he knew was a Trinidad gang member. Why don't we go with what Hurd himself said in his declaration? What he said was the basis for his stop, because I just want to explore whether all these factors rise to reasonable suspicion and what that means for other cases. He says he knew there had been an ambush a few years earlier. It was a known gang location. So I'm looking at paragraph 6 and 7 of Hurd's declaration. There was the location factor, the fact that defendant was a known gang member, the fact that he had seen defendant driving with Evans who he knew was a murder suspect, and the fact that it was evening. So those are his factors for reasonable suspicion. And I guess I'm just wondering if these are sufficient factors that whether a police officer can pull out a gun and stop anybody, say, in Hawaiian Gardens any time, because it's a known gang hangout location, it's an unsafe place for outsiders, there's a risk that anybody there might have a gun. Certainly almost everybody there, to the extent they're known, has probably hung out with other gang members who have committed other crimes or are suspected of committing other crimes. What brings this case out of the just you can stop at gunpoint any gang member any time? I think here the fact that you have what constituted evasive behavior after they saw the police. Well, what was the evasive behavior? The evasive behavior was when they first saw the police, they were on Chevy Chase Drive. The police had stopped. They slowed down. The police flashed a warning to them. They had to slow down. They did. Okay, you can see they had to slow down. You can see the police flashed a light for the police's own reason. Then they just continued on their way. And they weren't stopped then anyway, so that can't, okay. But what happened was instead of going to the address where they actually found the defendant was also on Chevy Chase Drive. It was simply across the street. Right. But instead of simply proceeding directly to that location, as soon as they saw the police, they then took a turn and then parked the car at the end of a driveway two blocks away. And as the facts suggest, given where he was found proceeding from the back of the property on Chevy Chase Drive and given the wall, it appears that they had actually scaled the wall to get over to the property because the police didn't see them as they were looking for the van. So you're suggesting that the fact that they didn't just park the car in front of the house where they're going is an additional factor? Yes, Your Honor. Okay. Well, the officer doesn't say that. No, but we believe under Wren. This is sort of a post-characterization. You're articulating some reasonable suspicion that the police didn't. Correct. But we believe under Wren that the correct approach is to look at all of the facts of which the officers, the officers have to be aware of those facts. But don't they have to have a reasonable, particularized, articulable suspicion? And if you can't, the lawyers can't come back later and say, oh, but here's the reasonable suspicion. It has to be what the police had at the time, right? Well, actually, under Wren it says it's not what the court, it's not what the officer's subjective reasons were. It's whether there were sort of facts that gave rise that they were aware of. So you do look to what the officers know.  But they didn't say that. They're not saying it or testifying to it. There's no testimony that they thought it was evasive behavior, that there was evasive behavior. But they did testify that the ---- See, I think you might have enough without coming back and make two arguments, blight and evasiveness, which I don't think you need to even make. They're lawyers' arguments. They're not what happened or what the officers say happened. Well, we'd continue to make those arguments. We do think based on what he said in his testimony. Well, you made them, so they're there. But what factors based on what Herd said would you say gave rise to reasonable suspicion? I think the proximity of the time between seeing the defendant driving with a fellow gang member who was wanted for murder, the fact that they found them at a known gang hangout, without defendant, I'm sorry, without the individual who was suspected, suggesting that the individual who was wanted for murder fled at that time. So really what you're saying is you have to find the standard of morality of the circumstances. You don't just look at the particular stop that happened five minutes later. You look at the whole series of events that led up to the stop. Correct. And that's why I think the defendant's public conception that they had reasonable suspicion when they first saw the van, I think, is significant here because nothing that happened after that sort of dissipated the suspicion. Okay. Except that the person for whom they had the warrant wasn't there. Correct. But the individual who was driving, who was a member of the same gang, I think then you add in the other factors that occurred, the parking away from the place where they were actually going. Do you use greater suspicion to pull guns to make it a forcible stop? Well, I think under that actually was not an initiative to raise. I think given the circumstances, they were justified in pulling their guns. There's been no contention on appeal that this was in fact an arrest as opposed to a simple Terry stop. Yeah, yeah. And given the circumstances, this was a violent gang. The officer knew that they had ambushed police in the past. When they saw a defendant, they didn't see the individual who was wanted for murder, so they didn't know that he was around and potentially a threat to them. So I think under those circumstances, they were entitled to pull their guns while asking him to stop and then to do the frisk. And in fact, defense counsel concedes the second issue as to whether the pat-down was justified. The real issue is whether the stop was justified by reason of suspicion. If I might note, with respect to the question of timing, you would ask whether or why the police didn't immediately stop the van. Well, the record isn't clear on that. It is clear that the matter of time between seeing the van and then actually stopping the defendant was a matter of minutes. This was not where they sort of dilly-dallied around. They moved fairly promptly to try and find the van. And once they found the van, they went to the gang hangout that they knew of. Finally, with respect to the question of what criminal activity they might have suspected the defendant of, I simply note that I'm not aware of any reasonable suspicion case that sort of taken the statute sort of element by element and demanded that they have proof of every single element. The question is, do they have reasonable suspicion of criminal activity? And in this case, we'd submit that there was based on facts. If the panel has any further questions, I'd be happy to submit. What is your position on the officer safety prong? With respect to the officer safety prong, we would submit that the risk in this case was certainly justified. They knew that the defendant was a gang member. This was at 7 o'clock in December, so it was dark at night. As I said, they'd just seen him minutes earlier in the company of an individual who was wanted for murder, who they didn't see there, so they didn't know if he was around. And they knew that the gang had a history of ambushes directed towards the police, and they were stopping him at a known gang hangout. So we'd submit under those circumstances they were entirely justified in frisking him. How about in making a forcible stop? Again, we'd submit that given the facts, they had reasonable suspicion that he was engaged in criminal activity. And given officer safety, they were entitled to draw their guns when they asked him to stop, given the location and the circumstances, essentially the totality of the circumstances. All right. Thank you. Thank you, Your Honor. Thank you. Mr. Tanaka, you have a minute left. Thank you, Your Honor. The point I want to make is that just because my client is a suspected gang member doesn't strip him of the Fourth Amendment protections. And what the government is contending here is that his mere presence, driving a vehicle which has a person for whom there's a warrant, somehow makes him a suspect in criminal activity. If it had been Mr. Evans' mother driving that van instead of Mr. Montes, would the same analysis apply? It should apply. It should apply. And because there's nothing that Mr. Montes did other than being present in that van that led the police or gave the police any reason to suspect that he, as opposed to Mr. Evans, was engaged in any criminal activity. Right, but he was driving the van, and he parked it in a place that isn't necessarily logical to have parked if you were going somewhere else. He parked it, and then he was someplace where he didn't park it. That suggests that he was going someplace other than where he initially parked. It doesn't say anything about helping Mr. Evans escape or harboring a fugitive or anything like that, which is what? The only criminal activity that could be possible here. We have to separate the police's power and ability to stop Mr. Evans, who they have carte blanche to stop, and anyone who happened to be in contact with Mr. Evans at any particular point in time that evening or in previous months. That's the key factor here. So for you, the fact that he was driving the car, not just the passenger with him or not just with him in any other way, has no significance. I'm sorry. So for you, the fact that this was the van that was driving the car in which this person was riding and they were going together has no significance. It has some significance, but there's certainly nothing that says that he, by that fact, is committing a crime. And if he wasn't, then the thought that the gunpoint was over. Thank you, Counsel. U.S. v. Montes is submitted.
judges: Wardlaw, Rawlinson, Smith N. R.